DECISION AND JOURNAL ENTRY
This cause was heard upon the record in the trial court. Each error assigned has been reviewed and the following disposition is made:
 {¶ 1} Defendant-Appellant, Paul E. Smith, appeals his convictions for multiple counts of rape and gross sexual imposition. We affirm.
 {¶ 2} For three to four years, Defendant sexually abused his great-granddaughter on a regular basis. At age eleven, the victim, K.K., reported the abuse to a teacher following health class. On May 15, 2006, Defendant drove to the Tallmadge Police Department, where he was questioned by Detectives Scott Christopher and Dave Chocola during a noncustodial interview. The Detectives presented Defendant with a written statement of his Miranda rights, and Detective Christopher read those rights to Defendant. Defendant initialed next to each *Page 2 
portion of the statement and signed at the bottom indicating that he understood his rights. Within moments, Defendant confessed to "play[ing] around with" K.K. On May 18, 2006, Defendant was interviewed a second time.
 {¶ 3} On May 24, 2006, Defendant was indicted on six counts of rape in violation of R.C. 2907.02(A)(1)(b), which prohibits sexual conduct with a person under the age of thirteen years, a felony of the first degree. He was also indicted on three counts of gross sexual imposition in violation of R.C. 2907.05(A)(4), which prohibits sexual contact with a person under the age of thirteen years, a felony of the third degree. Defendant pled not guilty on June 7, 2006, and on July 17, 2006, moved to suppress the confession obtained during the May 18th interview. On July 24, 2006, Defendant amended his motion to challenge the confession obtained during the May 15th interview as well. The trial court granted Defendant's motion with respect to the May 18th interview, but stated that the State would be permitted to introduce the statements therein at trial if Defendant testified. The trial court denied Defendant's motion with respect to the May 15th interview.
 {¶ 4} After the suppression hearing, Defendant retracted his plea of not guilty and pled no contest to all charges. The trial court found him guilty of each and, on January 8, 2007, sentenced him to a mandatory life sentence for each rape charge and to five years imprisonment for each count of gross sexual imposition. *Page 3 
The court ordered that all sentences would be served concurrently. Defendant timely appealed, raising one assignment of error.
 ASSIGNMENT OF ERROR "The trial court erred in overruling [Defendant's] motion to suppress his confession."
 {¶ 5} In his single assignment of error, Defendant asserts that the trial court erred by overruling his motion to suppress the statements he made during the May 15th interview with Tallmadge police. Specifically, Defendant maintains that Detectives Christopher and Chocola made promises of leniency which, as part of the totality of the circumstances, rendered his confession involuntary. We disagree.
 {¶ 6} The Due Process Clause of the Fourteenth Amendment requires the exclusion of confessions that are involuntarily given by an accused.Dickerson v. United States (2000), 530 U.S. 428, 433; State v.Evans (2001), 144 Ohio App.3d 539, 560. The test under this due process analysis is "`whether a defendant's will was overborne' by the circumstances surrounding the giving of a confession. * * * [taking] into consideration `the totality of all the surrounding circumstances — both the characteristics of the accused and the details of the interrogation.'" Dickerson, 530 U.S. at 434, quoting Schneckloth v.Bustamonte (1973), 412 U.S. 218, 226. The totality of the circumstances that a court should consider includes "the age, mentality, and prior criminal experience of the accused; the length, intensity, and frequency of interrogation; the existence of physical deprivation or mistreatment; *Page 4 
and the existence of threat or inducement." State v. Edwards (1976), 49 Ohio St.2d 31, paragraph two of the syllabus, vacated on other grounds (1978), 438 U.S. 911.
 {¶ 7} An appellate court's review of a trial court's ruling on a motion to suppress, therefore, presents a mixed question of law and fact. State v. Long (1998), 127 Ohio App.3d 328, 332. The trial court acts as the trier of fact during a suppression hearing and is best equipped to evaluate the credibility of witnesses and resolve questions of fact. State v. Hopfer (1996), 112 Ohio App.3d 521, 548, quotingState v. Venham (1994), 96 Ohio App.3d 649, 653. Accordingly, we accept the trial court's findings of fact so long as they are supported by competent, credible evidence. State v. Guysinger (1993),86 Ohio App.3d 592, 594.
 {¶ 8} An express or implied promise of leniency is one factor to be considered among the totality of the circumstances, but is not, standing alone, determinative. "`The police can render a confession involuntary if they extract a confession by the use of a direct or implied promise of leniency. However, the mere presence of a promise of leniency does not as a matter of law render a confession involuntary. * * * [A] promise of leniency must be coupled with other factors to render a confession involuntary under the totality of the circumstances test.'" (Internal citations omitted.) State v. Copley, 170 Ohio App.3d 217,2006-Ohio-6478, at ¶ 18, quoting State v. Robinson (Jan. 11, 1995), 9th Dist. No. 16766. *Page 5 
 {¶ 9} In Robinson, a defendant who was a mature adult with no apparent mental deficiency claimed that he was promised leniency in the form of no criminal prosecution in return for his confession. Robinson at *1-2. The trial court found that he had prior criminal experience, had been fully apprised of his Miranda rights, and had suffered no deprivation or mistreatment at the hands of law enforcement officers. Id. at *2. This court concluded that the interviewing officer's statement that he would recommend that the defendant not be prosecuted if he cooperated was an explicit promise of leniency. Id. at *5. We nevertheless concluded that the promise of leniency did not render the defendant's confession involuntary based on the totality of the circumstances, noting that because of the timing of the promise in the interview, there was no causal connection between the promise and the confession. Id.
 {¶ 10} In Copley, we had occasion to apply these standards again. In that case, an eighteen-year-old female was accused of sexual contact with a child. During her interview, an investigating officer "asked appellee what she thought should happen to a person who performed oral sex on a two-year-old child." Copley at ¶ 14. When the defendant did not answer, the investigating officer reminded her that she had previously stated "that such a person should get counseling, care, or treatment." Id. We concluded that these and similar statements constituted an implied promise of leniency, yet were insufficient to render the defendant's confession involuntary. Id. at ¶ 19. *Page 6 
 {¶ 11} In this case, the trial court heard testimony from Detective Christopher and from Defendant and considered a full transcript of the interview as well as the written notification of Miranda rights and waiver executed by Defendant. According to Detective Christopher's testimony, Defendant, a seventy-five year-old male, appeared to be alert, well-rested, and "easy going" during the interview. He did not appear to be under the influence of drugs or alcohol or to have any medical or emotional issues that affected his ability to participate in the interview. Detective Christopher testified that Defendant informed the detectives that he had an eighth grade education and had retired from an established career of thirty-three years. The detectives noted that Defendant was able to read and write English. Detective Christopher further testified that Defendant was provided with oral and written notice of his Miranda rights and that he executed a written waiver prior to the interview. The interview lasted a total of thirty-seven minutes and fifteen seconds.
 {¶ 12} Defendant testified that he drove himself to the police station for the interview at the request of police. He testified that, while he was on several different medications at the time of the interview, those medications do not produce unintended side effects if taken correctly. Defendant noted that he had taken the same combination of medications on the morning of the suppression hearing. *Page 7 
 {¶ 13} Defendant maintains that five statements made by the detectives during the interview processes constituted promises of leniency which render his confession involuntary. These statements fall into three categories: (1) the first statement, which occurred before the interview was underway; (2) the second, third, and fourth statements, which were made after Defendant confessed and provided graphic details of his crimes, at various points during his confession; and (3) the fifth statement, which was made at the close of the interview.
 {¶ 14} The first statement was made as Detective Christopher reminded Defendant of the purpose of the interview:
 "Det. Christopher: Alright sir, what we are here to talk about today (is) definitely involves [sic] your granddaughter [K.K.] * * * she's made some allegations against you and she told us some things . . . I was at children's hospital this morning at an interview she was at and it's going to be really important that we get to, you know, find out the facts, what's right, what's wrong, where we're at if you were involved if you weren't involved, and I don't know that right now I don't have a clue-
 "Det. Chocola: Get you help if you need to get help."
Immediately thereafter, Detective Christopher reviewed theMiranda rights with Defendant. Within moments, with no further mention of "help" by the detectives, Defendant confessed, stating as a matter of fact, "I abuse her. * * * Well, you know, I just I play around with her private parts." Defendant continued by providing graphic details in response to the detectives' questions.
 {¶ 15} The second, third, and fourth statements were made at various points during Defendant's detailed confession. The second statement, made by Detective *Page 8 
Chocola, occurred several minutes into Defendant's confession, after he had provided numerous, graphic details regarding the extent and frequency of his sexual contact with K.K. At that point, Detective Chocola said, "Why were you doing this with your granddaughter? * * * [A]nd um, like I said sir, we can try to get you help . . ." Defendant was offered a beverage, then continued to provide further detail.
 {¶ 16} The third statement occurred several minutes later when Detective Chocola stated:
 "OK. Like I said sir, you know what, no matter what is going to happen you are going to have to have some therapy over this. This is where you are going to have to talk to us and give us some details. I know this is going to be hard, but um, you have to. You have to talk to us. OK? Do you understand where we are coming from?"
Following this statement, Defendant elaborated further on his conduct.
 {¶ 17} Near the close of the interview, Detective Christopher expressed concern about Defendant returning to his home and asked whether he was considering suicide. In that context, the fourth exchange occurred:
 "Defendant: You don't have anything to worry about.
 "* * *
 "Defendant: I would not . . . I would not put my family through that.
 "Det. Christopher: I mean like he said when we started this we would just like to see you get some help.
 "Det. Chocola: You're going to need to get some help.
 "Det. Christopher: I mean obviously this isn't going to be the end of it. We're going to have some other stuff to do." *Page 9 
 {¶ 18} The fifth and final statement was made at the close of the interview, when, as Defendant prepared to provide a written statement, Detective Christopher stated:
 "You've been very honest with me and I do appreciate that, it does show a lot of character without a doubt but I don't want you to do anything foolish because like he, what he said earlier is, you know, there's a lot of things in play here, people can help you there's things that can change * * * beyond that sometime later this week we'll get together and instead of me taking you to county jail I'll just take you right down to the judge and we'll start from there instead of putting you right into county how's that[?] [D]oes it sound like a fair deal? And, uh, I don't know what the judge is going to do when we take you in there but, uh, you know, at least, at least I'm not throwing you off into county overnight you know right off from the get go. Which, that could be happening right now, just so you know, but we're not going to do it that way. Like you said, you've got affairs you want to set in order and it will give you an opportunity to get your affairs in order."
 {¶ 19} In contrast to Copley and Robinson, the detectives in this case never promised Defendant that they would recommend that charges not be brought against him, nor did they associate "help" or "treatment" with the absence of prosecution or jail time. At most, therefore, these statements constitute implied promises of leniency. The first statement, at the opening of the interview, immediately preceded Defendant's written and oral notification of his Miranda warnings. Assuming that this statement could be considered an implied promise of leniency, it was immediately followed by the warning that Defendant's statements could be used against him and the notice that he had the right to remain silent. The fifth statement was made in the immediate context of informing *Page 10 
Defendant that he would be arraigned and that — although they could legitimately have arrested him on-the-spot — they were not going to do so at that time. Thus, this statement explicitly associates "help" or treatment with criminal prosecution and is not a promise of leniency.
 {¶ 20} Considering the detectives' statements in the context of the totality of the circumstances surrounding the interview, we conclude that these statements were not sufficient to render Defendant's confession involuntary. Defendant's assignment of error is overruled.
 {¶ 21} Defendant's assignment of error is overruled, and the judgment of the trial court is affirmed.
Judgment affirmed.
The Court finds that there were reasonable grounds for this appeal.
We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Summit, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.
Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(E). *Page 11 
The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.
Costs taxed to Appellant.
MOORE, J. BAIRD, J., CONCUR
(Baird, J., retired, of the Ninth District Court of Appeals, sitting by assignment pursuant to, § 6(C), Article IV, Constitution.) *Page 1